UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH HOLLEN,<br><br>                              Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                              Defendant. | Case No.:  15-cv-2357-GPC (DHB)<br><br>**REPORT AND<br>RECOMMENDATION REGARDING<br>CROSS-MOTIONS FOR SUMMARY<br>JUDGMENT**<br><br>**(ECF Nos. 11, 12)** |

I.     **INTRODUCTION**

On October 19, 2015, Plaintiff Deborah Hollen ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) of the Social Security Act requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner" or "Defendant") regarding the denial of Plaintiff's claim for disability benefits.  (ECF No. 1.)  On January 4, 2016, Defendant filed an answer and the administrative record ("A.R."). (ECF Nos. 8, 9.)

On February 17, 2016, Plaintiff filed a motion for summary judgment seeking reversal of Defendant's denial and an award of disability benefits, or, alternatively, remand for further administrative proceedings. (ECF No. 11.) Plaintiff contends that the Administrative Law Judge ("ALJ") committed reversible error by: (1) failing to follow

1

proper procedure in eliciting testimony from the medical expert at the hearing; (2) failing to properly consider lay evidence; and (3) failing to include mental impairments in the hypothetical question posed to the vocational expert at the hearing. *Id*. On March 25, 2016, Defendant filed a cross-motion for summary judgment and an opposition to Plaintiff's motion for summary judgment. (ECF Nos. 12, 13.)[1]  On April 12, 2016, Plaintiff filed a response in opposition to Defendant's cross-motion for summary judgment and a reply to Defendant's opposition to her motion for summary judgment. (ECF Nos. 14, 15.)[2]

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED** and Defendant's cross-motion for summary judgment be **GRANTED**.

## II.    PROCEDURAL BACKGROUND

On June 5, 2013, Plaintiff filed an application for disability insurance benefits, alleging disability beginning on December 1, 2011.  (A.R. 57, 159.)  In her application, Plaintiff alleged disability due to heart disease, anxiety, depression, high blood pressure, and pre-diabetes. *Id.* at 57, 162.  Plaintiff's claim was initially denied on September 17, 2013, and upon reconsideration on October 28, 2013. *Id.* at 15. Thereafter, on November 6, 2013, Plaintiff requested a hearing before an ALJ. *Id.* at 97–99. On November 6, 2014, ALJ Keith Dietterie held a hearing regarding Plaintiff's application for social security disability benefits. *Id.* at 28–56. On January 5, 2015, the ALJ rendered an unfavorable decision and concluded that Plaintiff was not entitled to benefits. *Id.* at 15–23. The ALJ's decision became final on September 24, 2015, when the Social Security Appeals Council denied Plaintiff's request for review. *Id.* at 1–6. Thereafter, Plaintiff filed a complaint in the above-entitled matter.  (ECF No. 1.)

---

[1] Although filed as two separate documents on the Court's Electronic Court Filing system, Defendant's cross-motion for summary judgment and response in opposition to Plaintiff's motion for summary judgment are identical. (*See* ECF Nos. 12, 13.)

[2] Plaintiff's response in opposition to Defendant's cross-motion for summary judgment and her reply to Defendant's opposition are identical. (*See* ECF Nos. 14, 15.)

## III.   LEGAL STANDARDS

### A.   Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must demonstrate the following two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the applicant incapable of performing the work she previously performed or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id*.

The Commissioner assesses a claim of disability through a five-step sequential evaluation process. The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)). If an applicant is found to be disabled or not disabled at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (citing *Schneider v. Comm'r of Soc. Sec. Admin*., 223 F.3d 968, 974 (9th Cir. 2000)).

1    Although the ALJ must assist the claimant in developing a record, the claimant bears
2    the burden of proof during the first four steps. *Tackett*, 180 F.3d at 1098, n.3 (citing 20
3    C.F.R. § 404.1512(d)).  The Commissioner bears the burden of proof at the fifth step and
4    must "show that the claimant can perform some other work that exists in 'significant
5    numbers' in the national economy, taking into consideration the claimant's residual
6    functional capacity ("RFC"),[3] age, education, and work experience." *Id*. at 1100 (citing 20
7    C.F.R. § 404.1560(b)(3)).

8    **B.    Scope of Review**

9    The Social Security Act allows unsuccessful claimants to seek judicial review of the
10   Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of
11   judicial review is limited.  A reviewing court must affirm the Commissioner's decision
12   unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell*
13   *v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999) (citing *Flaten v. Sec'y of Health & Human*
14   *Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)); *see also Bayliss v. Barnhart*, 427 F.3d 1211,
15   1214 n.1 (9th Cir. 2005) (citation omitted) ("We may reverse the ALJ's decision to deny
16   benefits only if it is based upon legal error or is not supported by substantial evidence.").
17   "Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*,
18   161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)).
19   "Substantial evidence is relevant evidence which, considering the record as a whole, a
20   reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at
21   1457 (citing *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993)).

22   The reviewing court must consider the record as a whole and weigh both the
23   evidence that supports and detracts from the ALJ's conclusion. *Frost v. Barnhart,* 314 F.3d
24   359, 366–67 (9th Cir. 2002) (citing *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985)).
25   If the evidence is susceptible to more than one rational interpretation, one of which supports

26   _____

27   [3] The RFC is the most a claimant can still do despite her limitations. 20 C.F.R. §
28   404.1545(a)(1).

the ALJ's decision, the reviewing court must uphold the denial of benefits. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must nonetheless set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (citing *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)). Section 405(g) of the Social Security Act permits the reviewing court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The court may also remand the matter to the Social Security Administration for further proceedings. *Id*. If a case is remanded and an additional hearing is held, the Commissioner may modify or affirm the original findings of fact or the decision. *Id.*

## IV.   FACTUAL BACKGROUND

Plaintiff alleges that she became disabled as of December 1, 2011. (A.R. 57, 143, 159.) Initially, Plaintiff alleged disability due to heart disease, high blood pressure, anxiety, depression, and a pre-diabetic condition. *Id.* at 57. Plaintiff subsequently alleged a physical impairment of her right shoulder. (ECF. No. 11.) Prior to her disability, Plaintiff worked as a retail sales associate, teacher's aide, telephone solicitor, and mortgage loan processor. (A.R. 23.)

### A.   Medical Evidence[4]

#### 1.   Treating Physician Evidence

##### a.   *Adla Tessier, M.D.*

On December 16, 2011, Plaintiff saw Dr. Adla Tessier, M.D. (A.R. 272.) Plaintiff reported feeling depressed and stated that her depression had worsened because she had

---

[4] Plaintiff contests the ALJ's treatment of the medical expert's testimony and findings regarding her mental impairments and body stiffness. The medical expert's testimony is discussed below. Therefore, only Plaintiff's mental health evidence and records regarding mental impairments and muscle stiffness are summarized here.

5

1   been through a divorce. *Id.* Dr. Tessier noted that Plaintiff was tearful but in no apparent

2   distress. *Id.* Dr. Tessier also noted that Plaintiff had appropriate thought content and insight.

3   *Id.* Dr. Tessier indicated that Plaintiff suffered from depressive disorder and provided her

4   with information for mental health services, but declined to provide mental health

5   treatment, opting instead to "defer management for depression to the psychiatrist." *Id.*

6                        b.   *Courtney Summers, M.D.*

7        On August 29, 2012, Plaintiff saw Dr. Courtney Summers, M.D for the removal of

8   a mole. (A.R. 300–01.) Plaintiff also complained of anxiety and requested valium. *Id.* Dr.

9   Summers noted that she believed Plaintiff had anxiety, but declined to prescribe medication

10  and told Plaintiff that she should see a psychiatrist. *Id.* Dr. Summers noted she had referred

11  Plaintiff to a psychiatrist in the past, but Plaintiff had not followed up. *Id.* Dr. Summers

12  indicated that Plaintiff reported that she buys Valium in Mexico and has a prescription for

13  Wellbutrin. Plaintiff saw Dr. Summers again on September 12, 2012, for gum swelling.

14  *Id.* at 298.  Dr. Summers noted that Plaintiff's mental status was "alert" and that Plaintiff

15  did not appear to be in any distress. *Id.* Plaintiff saw Dr. Summers on April 26, 2013,

16  complaining of a cough and sore throat. *Id.* at 294–95. Dr. Summers again noted that

17  Plaintiff's mental status was "alert" and that Plaintiff did not appear to be in distress. *Id.*

18       On July 3, 2013, Plaintiff saw Dr. Summers. *Id.* at 292–93. The focus of the

19  appointment was on Plaintiff's hypertension, however, Plaintiff also noted feeling anxious.

20  *Id.* Plaintiff asked Dr. Summers to fill out paperwork with regards to a disability claim and

21  include Plaintiff's depression in the forms. *Id.* Dr. Summers declined to fill out the

22  disability forms on the basis of Plaintiff's depression because Plaintiff and Dr. Summers

23  had never meaningfully addressed Plaintiff's depression. *Id.* Dr. Summers prescribed

24  Plaintiff Wellbutrin.[5] *Id.*

25

26

27

28  [5] The record indicates that although Plaintiff was prescribed Wellbutrin, she does not take
    the medication. (*See* A.R. 40.)

6

1    Plaintiff saw Dr. Summers again on October 17, 2013, regarding abdominal pain.

2  *Id.* at 366–67.  Dr. Summers noted that Plaintiff's mental status was "alert" and that

3  Plaintiff did not appear to be in any distress. *Id.* On April 7, 2014, Plaintiff saw Dr.

4  Summers for fatigue. *Id.* at 352–53. Dr. Summers noted that Plaintiff stated she could not

5  work because she is exhausted and is trying to get disability benefits. *Id.* Dr. Summers

6  noted that Plaintiff's fatigue was "not new" and was potentially related to untreated

7  psychological issues. *Id.* at 353. Plaintiff saw Dr. Summers again on June 30, 2014.

8  Plaintiff complained of muscle pain and requested a referral to a rheumatologist. *Id.* at 350–

9  51. Dr. Summers noted that she did not find anything abnormal upon examining Plaintiff,

10  but referred Plaintiff to a rheumatologist per her request. *Id.* at 351.

11                               c.   *Roshan Kotha, M.D.*

12    On August 14, 2014, Plaintiff saw Dr. Roshan Kotha, M.D. regarding muscle

13  stiffness. *Id.* at 346–49. Dr. Kotha noted that Plaintiff's current strength was "5/5" and that

14  she did not have an inflammatory myositis. *Id.* at 348. Dr. Kotha noted that he was

15  considering referring Plaintiff to a neuromuscular clinic. *Id.* Plaintiff saw Dr. Kotha again

16  on September 8, 2014, because of her muscle stiffness. *Id.* at 343–45. Dr. Kotha again

17  found Plaintiff's current strength was "5/5" and that she did not have an inflammatory

18  myositis. *Id.* at 345. Dr. Kotha referred Plaintiff to a neuromuscular clinic. *Id.*

19             **2.   Non-Examining Physician Evidence**

20                               a.   *Robert A. McAuley, M.D.*

21    In the initial Disability Determination, Dr. Robert A. McAuley, M.D., a state agency

22  reviewing psychiatrist,[6] opined that Plaintiff did not have a severe mental health

23  impairment. *Id.* at 62. He noted that Plaintiff had no recent treatment or prescription

24  history. *Id.* He further noted that Plaintiff's activities of daily living were intact,

25  highlighting that she cares for her mother and grandchild. *Id.* Dr. McAuley noted that

26  

27  _____

28  [6] The Court's review of the American Board of Psychiatry and Neurology's licensure
database demonstrates that Dr. McAuley is a board-certified psychiatrist.

Plaintiff had documented depression in 2011 following her divorce, but that he believed the condition had been treated and was presently non-severe. *Id.* In support of that opinion, Dr. McAuley noted there had been no recent mention of mental health issues in Plaintiff's medical records until Plaintiff requested a doctor include depression in her disability claim, which the doctor declined to do because the doctor had not been treating Plaintiff for depression. *Id.*

### b.   *H. Skopec, M.D.*

In the Disability Determination Reconsideration, Dr. H. Skopec, M.D., a state agency reviewing psychiatrist,[7] reviewed Plaintiff's medical records and Dr. McAuley's initial Disability Determination Report. *Id.* at 68–74. Dr. Skopec noted that Plaintiff had no new evidence of medical treatment. *Id.* at 73. Dr. Skopec then affirmed Dr. McAuley's opinion that Plaintiff did not have a severe mental impairment. *Id.* at 73–74.

### c.   *A. Lizarraras, M.D.*

In the Initial Disability Determination, A. Lizarraras, M.D., a state agency reviewing physician, opined that Plaintiff could: (i) occasionally lift and/or carry 20 pounds; (ii) frequently lift and/or carry 10 pounds; (iii) sit, stand, and/or walk for about 6 hours in an 8-hour work day. *Id.* at 63. Dr. Lizarraras noted that Plaintiff had some shoulder limitations and could only occasionally reach overhead with her right extremity. *Id.* However, Dr. Lizarraras noted that Plaintiff's tendonitis should heal over time with physical therapy. *Id.* at 64. Dr. Lizarraras noted that there was no evidence of significant cardiovascular disease and that Plaintiff's hypertension was controlled. *Id.*

### d.   *M. Ormsby, M.D.*

In the Disability Determination Reconsideration, Mr. Ormsby, M.D., a state reviewing physician, reviewed Plaintiff's medical records and Dr. Lizarraras's initial Disability Determination Report. *Id.* at 73–77. Dr. Ormsby affirmed Dr. Lizarraras's

---

[7] The Court's review of the American Board of Psychiatry and Neurology's licensure database demonstrates that Dr. Skopec is a board-certified psychiatrist.

opinion and noted that Plaintiff has a light RFC and a limitation in her ability to reach overhead with her right extremity. *Id.* at 73.

**B.    The Hearing**

**1.    Plaintiff's Testimony**

On November 6, 2014, Plaintiff testified at a hearing before the ALJ in San Diego, California. *Id.* at 28–42. Plaintiff testified that she was born on November 8, 1955. *Id.* at 32. When asked the highest level of education she had completed, Plaintiff stated that she had attended some college. *Id.* Plaintiff testified that, in the past fifteen years, she has held many jobs, most recently working as a retail sales associate. *Id.* at 32–33. Plaintiff testified that she stopped working in December 2011 because she was having emotional issues related to a divorce and had a "meltdown at work." *Id.* at 32–35. Then, Plaintiff testified that she collected unemployment after leaving that position through 2013 and that, during this time, she was trying to get re-hired by her former employer and was looking for other work. *Id.* at 35. Plaintiff testified that she does not think she could hold a full-time position now primarily due to "some kind of muscular disease" that leaves her stiff and exhausted. *Id.* at 35–36. Plaintiff also testified that she suffers from slight insomnia at night and must lay down three to four times during the day. *Id.* at 37.

Plaintiff testified that she lives with her eighty-five-year-old mother and a roommate. *Id.* at 37–38. To assist her mother, Plaintiff testified that she takes out her mother's trash, brings in her mother's mail, and cleans her mother's cat's litter box. *Id.* at 38. In terms of maintaining the household, Plaintiff testified that she does laundry, cooks, and cleans. *Id.* Plaintiff further testified that she can sit for an hour or two and stand for about forty-five minutes before having difficulty. *Id.* at 39. Plaintiff testified that she walks well without assistance and can drive but gets lost easily. *Id.* at 38–39.

Plaintiff testified that she has a prescription for antidepressants, but declines to take the medication because it makes her feel "a little crazy." *Id.* at 40. Plaintiff further stated that she does not see a psychiatrist or psychologist regularly. *Id.* In her free time, Plaintiff testified that she likes to use the computer and take care of her two-and-a-half-year-old

grandson. *Id.* at 40–42. However, Plaintiff can only care for her grandson for one or two days at a time because "[i]t's a lot of work." *Id.* at 41–42. On occasion, Plaintiff and her mother go out to eat or see a movie. *Id.* at 41.

### 2.     Medical Expert's Testimony

Next, the ALJ took testimony from Dr. Edwin Bryan, M.D., an agency medical expert who testified based on his review of Plaintiff's medical records. *Id.* at 42–46. As to Plaintiff's physical impairments, Dr. Bryan testified that Plaintiff has cardiovascular disease in the form of hypertension. *Id.* at 43. Dr. Bryan stated that this condition has been well-controlled with medication and that Plaintiff has "very good cardiac function" as shown by her medical records from an exercise tolerance test. *Id.* Next, Dr. Bryan noted that Plaintiff was diagnosed with tendonitis in her right shoulder and has some decreased range of motion in that shoulder. *Id.* However, Dr. Bryan declined to opine as to whether Plaintiff's ability to function is significantly impaired by the decreased range of motion in her right shoulder. *Id.* Dr. Bryan also testified that Plaintiff was evaluated for "muscle symptoms," but the evaluation led to no specific findings. *Id.*

Regarding Plaintiff's mental impairments, Dr. Bryan first noted that the record demonstrated possible alcohol abuse, but there was not enough information for Dr. Bryan to opine as to the seriousness of the issue. *Id.* at 44. Next, Dr. Bryan noted that the record contained evidence of depression and anxiety as Plaintiff has occasionally been medicated for those issues. *Id.* However, Dr. Bryan highlighted that there were no psychiatric evaluations in the record. *Id.*

In sum, Dr. Bryan opined that the evidence from the record did not support a finding of any mental health limitations. *Id.* As to Plaintiff's physical impairments, Dr. Bryan concluded that there could "be a limitation in the use of Plaintiff's right arm above the head" depending on Plaintiff's level of symptomology. *Id.* at 44–45. However, Dr. Bryan testified that this physical limitation would not prevent Plaintiff from working at an occupation with a sedentary or light activity level. *Id.* at 45.

15-cv-2357-GPC (DHB)

Plaintiff's counsel then asked Dr. Bryan if he had listened to Plaintiff testify at the hearing regarding her emotional state. *Id.* Dr. Bryan responded that he had not heard the testimony, but noted there were references to Plaintiff's emotional state in the record he had reviewed. *Id.* at 45–46. The ALJ then interjected and told Plaintiff's counsel that "[Dr. Bryan's] job is to review the medical records and to give . . . an opinion based on the medical records, not the testimony of [Plaintiff]." *Id.* at 46. Thereafter, Dr. Bryan responded to Plaintiff's counsel that he could not "make a full assessment of [Plaintiff's] mental status without examination," but that he was testifying from the medical records as he interpreted them. *Id.* Plaintiff's counsel did not ask Dr. Bryan additional questions. *Id.*

### 3.   Vocational Expert's Testimony

Finally, the ALJ took testimony from Erin Welsh, a vocational expert. *Id.* at 47–54. Ms. Welsh testified that Plaintiff's prior work experience is described in the *Dictionary of Occupational Titles* as: (1) a retail sales associate, which is a semi-skilled position with a light exertion level that requires a specific vocational preparation ("SVP") time of 3; (2) a teacher's aide, which is a semi-skilled position with a light exertion level that requires an SVP time of 3; (3) a telephone solicitor, which is a semi-skilled position with a sedentary exertion level that requires an SVP time of 3; and (4) a mortgage loan processor, which is a skilled position with a sedentary exertion level that requires an SVP time of 8, but because Plaintiff did not hold any licenses relating to this position, it was performed at an SVP time of 5. *Id.* at 49, 53.

The ALJ asked Ms. Welsh to consider a hypothetical claimant with the same age, education, and past work experience as Plaintiff who: (i) can sit for six hours in an eight-hour work day and stand/walk for six hours in an eight-hour work day; (ii) can occasionally or frequently lift ten pounds; (iii) can occasionally climb stairs, balance, stoop, kneel, crouch, crawl, and use the right upper extremity for reaching overhead; and (iv) cannot climb ladders, scaffolds, and ropes. *Id.* at 53–54. Ms. Welsh opined that such a hypothetical claimant would be able to perform all of Plaintiff's past work. *Id.* at 54.  The ALJ then asked Ms. Welsh whether that same hypothetical claimant could perform any of Plaintiff's

past work if, in addition to the conditions already set forth in the first hypothetical, the claimant would be off task twenty percent of the day due to psychological problems. *Id.* Ms. Welsh responded that such a hypothetical claimant would be unable to perform any job in the labor market. *Id.*

## C.   The ALJ's Findings

On January 5, 2015, the ALJ rendered an unfavorable decision regarding Plaintiff's application for disability benefits. *Id.* at 15–23. The ALJ followed the five-step, sequential evaluation process in rendering his decision. *Id*. At step one, the ALJ concluded that Plaintiff "has not engaged in substantial gainful activity since December 1, 2011, the alleged onset date."[8] *Id.* at 17.

At step two, the ALJ concluded that Plaintiff has the following severe impairments: hypertension and right shoulder tendonitis. *Id*. At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or equal the severity of impairments contained in the Listing of Impairments. *Id.* at 19. Specifically regarding Plaintiff's hypertension, the ALJ found that, under the List of Impairments, "hypertension is evaluated by reference to the body system(s) affected (for example, heart, brain, kidneys, or eyes.) . . . . Since [Plaintiff] does not have an underlying condition that the hypertension is affecting, she will not meet any of the . . . listings."[9] *Id.* Regarding Plaintiff's right shoulder tendonitis, the ALJ found that Plaintiff's condition did not meet any impairments in the List of Impairments because the listing for joint dysfunction requires "an inability to perform fine and gross movements effectively," and Plaintiff can perform fine and gross movements effectively as demonstrated by her ability to do household chores and drive. *Id.*

---

[8] The ALJ noted that Plaintiff "had nominal earnings of $75.00" in 2012, which did not constitute substantial work. (A.R. 17.)

[9] A review of the record indicates that Plaintiff has no underlying conditions that have been diagnosed or treated and that are affected by her hypertension.

15-cv-2357-GPC (DHB)

Prior to step four, the ALJ determined that Plaintiff has the RFC to perform light work, including "occasionally lifting and/or carrying 20 pounds and frequently lifting and/or carrying 10 pounds." *Id.* The ALJ found that Plaintiff can sit, stand, and walk for six hours in an eight-hour workday. *Id.* The ALJ further determined that Plaintiff can "occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; and can never climb ladders, ropes, and/or scaffolds." *Id.* Finally, the ALJ found that Plaintiff can never reach overhead with her right upper extremity.[10] *Id.*

In making this assessment, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. *Id.* at 20–21. The ALJ further noted that he had considered but gave little weight to the opinion of Plaintiff's mother, Dorothy L. Nigh. *Id.* at 20. In evaluating the medical evidence and medical opinion evidence, the ALJ assigned great weight to the opinions of non-treating physicians Dr. Bryan, Dr. Lizarraras, Dr. Ormsby, Dr. McAuley, and Dr. Skopec. *Id.* at 21–22. The ALJ also noted that none of Plaintiff's treating physicians had offered medical opinions.[11] *Id.* at 21.

The ALJ then proceeded with step four of the sequential evaluation process. At this step, the ALJ found Plaintiff capable of performing her past relevant work as a retail sales associate, teacher's aide, telephone solicitor, and mortgage loan processor. *Id.* at 23. The ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. *Id.*

---

[10] The Court notes that this finding is inconsistent with the hypothetical question posed to the vocational expert in which the ALJ asked the vocational expert to consider a claimant who could occasionally use the right upper extremity to reach overhead. Plaintiff does not raise this inconsistency in her pleadings, therefore the Court will not address it.

[11] Upon thorough review of the record, the Court notes that the only evidence Plaintiff submitted in support of her alleged mental impairment are: (i) Plaintiff's own testimony, (ii) records from a treating physician indicating that Plaintiff was prescribed Wellbutrin, and (iii) records from a treating physician that Plaintiff reported purchasing her own Valium in Mexico. Plaintiff submitted no other evidence in support of an alleged mental impairment, such as any treatment records from a psychologist or psychiatrist.

## V.    DISCUSSION

In her motion for summary judgment, Plaintiff contends that the ALJ erred by failing to: (1) follow proper procedure when taking the medical expert's testimony at the hearing, (2) properly consider lay evidence in the record, and (3) include mental impairments in the hypothetical question posed to the vocational expert. Plaintiff seeks reversal of the ALJ's decision and an award of disability benefits, or, alternatively, remand for further administrative proceedings. In Defendant's cross-motion for summary judgment, Defendant counters that the ALJ's decision was supported by substantial evidence and should be upheld. For the reasons set forth below, the Court finds that the ALJ did not err.

### A.    The ALJ Did Not Err in Taking the Medical Expert's Testimony

#### 1.    Parties' Argument

Plaintiff argues that the ALJ erred by failing to follow proper procedure when taking the testimony of the medical expert, Dr. Bryan, at the hearing. (ECF No. 11 at 11).[12] Specifically, Plaintiff contends that the ALJ violated HALLEX section 2-5-39 by failing to summarize Plaintiff's hearing testimony for Dr. Bryan prior to his testimony. [13] *Id.* at 11–13. Plaintiff argues that Dr. Bryan's determination that Plaintiff can do sedentary or light work would have been affected had Dr. Bryan heard Plaintiff's testimony that she suffers from fatigue and insomnia, gets confused, does not socialize regularly with others, and is prescribed antidepressants that give her "horrible side effects" if taken. *Id.*  Because Dr. Bryan's opinion was formed without knowledge of Plaintiff's testimony and because the ALJ relied on Dr. Bryan's opinion in determining Plaintiff's RFC, Plaintiff argues that the ALJ "fail[ed] to follow procedure mandated by the Commissioner for the consideration of evidence, [therefore] his findings must be regarded as being based on error as a matter

---

[12] Page numbers cited refer to the page numbers assigned by the Court's Electronic Court Filing system.

[13] HALLEX, or the Hearings, Appeals, and Litigation Manual, is an internal Social Security Administration policy manual. HALLEX is available online at http://www.ssa.gov/OP_Home/hallex.

of law and the matter must be remanded for proper evaluation of the evidence." *Id.* at 13.

Defendant offers several reasons why the ALJ did not err when taking Dr. Bryan's testimony at the hearing. (ECF No. 12-1 at 3–6). First, Defendant contends that the ALJ was not required to follow HALLEX procedures. *Id.* at 3–4. Second, Defendant contends that Plaintiff's counsel was required to make any objections to Dr. Bryan's testimony at the hearing, but failed to do so. *Id.* at 4. Third, Defendant argues that Dr. Bryan was not required to review the entire record and hear Plaintiff's testimony to render an opinion because the ALJ, not the medical expert, determines a claimant's RFC. *Id.* at 4–5. Finally, Defendant contends that the ALJ did not err because the ALJ's final determination was based on the overall record and supported by substantial evidence, including Dr. Bryan's testimony, Plaintiff's significant activities of daily living, unremarkable treatment history, and the opinions of the state agency medical consultants. *Id.* at 5–6.

## 2.   Analysis

In assessing a disability claim, an ALJ may rely on medical "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The Commissioner applies a hierarchy of deference to these three types of opinions.  The opinion of a treating doctor is generally entitled to the greatest weight.  *Id.* (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987) ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2).  "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984)).  However, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113 (1997) (citing *Andrews v. Shalala*,

53 F.3d 1035, 1041 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)).

Here, the Court finds that the ALJ did not err procedurally in taking Dr. Bryan's testimony at the hearing. Plaintiff cites to section 2-5-39 of HALLEX for the proposition that an ALJ shall summarize the opening statement or relevant testimony on the record for the medical expert before the medical expert testifies. (ECF No. 11 at 11.) However, section I-2-5-39 of HALLEX states that an ALJ shall explain why a medical expert is present at a hearing before the medical expert testifies. HALLEX § I-2-5-39, 1994 WL 637374. Plaintiff presumably intends to refer to section I-2-6-70 of HALLEX, which states:

> The ME may attend the entire hearing, but this is not required. If the ME was not present to hear pertinent testimony, such as testimony regarding the claimant's current medications or sources and types of treatment, the ALJ will summarize the testimony for the ME on the record. If additional medical evidence is received at the hearing, the ALJ will provide it to the ME for review before the ME testifies.

HALLEX § I-2-6-70, 1993 WL 751901. Thus, Plaintiff relies on an outdated version of HALLEX to allege that the ALJ erred, whereas the current version of section I-2-6-70 of HALLEX makes evident that an ALJ need not summarize for a medical expert *all* hearing testimony. Regardless, the Court need not mince the words of section I-2-6-70 as HALLEX does not have the force or effect of law in the Ninth Circuit, so an ALJ does not commit error if he fails to follow the mandate of any of HALLEX's sections. *See Lockwood v. Comm'r of Soc. Sec. Admin.,* 616 F.3d 1068, 1072 (9th Cir. 2010) ("HALLEX does not impose judicially enforceable duties on either the ALJ or this court"); *accord Moore v. Apfel,* 216 F.3d 864, 869 (9th Cir. 2000) (citation omitted) ("As HALLEX does not have the force and effect of law, it is not binding on the Commissioner and we will not review allegations of noncompliance with the manual.").

Plaintiff argues that Ninth Circuit case law on compliance with HALLEX is outdated because the above-mentioned cases were decided before Social Security Ruling 13-2P. (ECF No. 14 at 2–3.) Plaintiff contends that Social Security Ruling 13-2P became effective

on March 22, 2013, and requires social security adjudicators to follow social security policies like HALLEX and the Program Operating Manual system ("POMS"). *Id.* However, Plaintiff's arguments are unpersuasive. In addition to the fact that Plaintiff is citing an outdated version of HALLEX, Plaintiff cites no authority demonstrating that the Ninth Circuit's position on HALLEX has been overturned or abandoned since March 2013. Rather, the Ninth Circuit recently reiterated that the Social Security Administration's agency policy "does not impose judicially enforced duties on either this court or the ALJ." *Withrow v. Colvin*, _ Fed. App'x _, 2017 WL 34529, at *2 (9th Cir. Jan. 4, 2017) (citation omitted) (discrediting the plaintiff's argument that her denial of social security benefits should be overturned because a portion of the hearing did not comport with POMS). Because HALLEX and POMS have been deemed equally judicially unenforceable, and the Ninth Circuit has recently reiterated that POMS is still judicially unenforceable, there is no reason to believe that HALLEX regulations now carry the force of law in this circuit. Accordingly, there was no judicially enforceable duty for the ALJ to summarize Plaintiff's hearing testimony for Dr. Bryan prior to Dr. Bryan's testimony, and the ALJ's failure to do so is not a procedural error for the purposes of this Court's review. Therefore, it follows that the ALJ's findings–based in part on Dr. Bryan's testimony–are not procedurally flawed because Plaintiff's testimony was not summarized for Dr. Bryan.

Overall, Plaintiff appears to take issue with the ALJ's conclusion that she has no severe mental impairments. Upon review of the record, it is apparent that this conclusion is supported by substantial evidence in the record. The ALJ properly considered the record as a whole, including Plaintiff's allegations of fatigue, insomnia, confusion, side effects from her antidepressants, lack of socializing, and that she does not get along with her children. (A.R. 20–21.) In determining that Plaintiff has no severe mental impairments, the ALJ also considered Plaintiff's significant activities of daily living, unremarkable mental health treatment history, and the nearly identical opinions of the two state agency reviewing psychiatrists that Plaintiff has non-severe mental impairments. *Id.* at 21–22. Findings of non-treating physicians can amount to substantial evidence in support of the ALJ's

15-cv-2357-GPC (DHB)

determinations, so long as other evidence in the record supports those findings. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113 (1997). The state agency psychiatrists' opinions were supported by Plaintiff's lack of recent treatment history for mental health issues and significant activities of daily living, including that Plaintiff socializes with her mother, sometimes attends church, and emails friends and neighbors. Therefore, the Court finds the ALJ's determination that Plaintiff does not have severe mental impairments is supported by substantial evidence and the ALJ did not err by declining to summarize Plaintiff's hearing testimony for Dr. Bryan.

### B.   **The ALJ Did Not Err in Considering Lay Evidence in the Record**

#### 1.   **Parties' Arguments**

Plaintiff contends that the ALJ erred by failing to properly consider lay evidence in the record. (ECF No. 11 at 13–16.) Specifically, Plaintiff appears to argue that the ALJ erred in discrediting both Plaintiff's hearing testimony and Plaintiff's mother's lay witness statement. Plaintiff's first argument regarding the alleged mistreatment of her hearing testimony is unclear. However, Plaintiff appears to argue that the ALJ lacked adequate reasons for rejecting her testimony that she feels stiff and exhausted every day, has to lay down several times per day, can only do minimal household chores, often gets confused, and does not take antidepressants due to their negative side effects. *Id.* at 14. Second, Plaintiff asserts that the ALJ failed to give adequate reasons for discounting Plaintiff's mother's, Ms. Nigh's, lay witness statement that Plaintiff is in chronic pain, does not handle stress well, forgets to take medication, has trouble doing chores, has frequent emotional outbursts, does not get along well with others, and is easily distracted. *Id.* at 14–16.

Defendant's argument is limited to the ALJ's treatment of Ms. Nigh's witness statement likely due to the confusing nature of Plaintiff's argument. Defendant contends that the ALJ properly considered and rejected Ms. Nigh's witness statement suggesting that Plaintiff has limitations beyond those identified in the RFC. (ECF No. 12-1 at 6–8.) Defendant argues that the ALJ need only provide germane reasons why he is discounting lay witness testimony, and that the ALJ did so. *Id.* Specifically, Defendant asserts that the

ALJ stated that he was rejecting Ms. Nigh's witness statement because it was substantially similar to her daughter's testimony, was unsupported by the medical evidence in the record, and because Ms. Nigh offered diagnoses although she is not medically trained to make such observations. Defendant contends that these are sufficient, germane reasons for rejecting Ms. Nigh's testimony. *Id.*

### 2.   **Analysis**

In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of an impairment or impairments and show that the impairment or combination of impairments could reasonably be expected to produce some degree of the symptoms described. *Id.* (citing *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007)). Second, if the claimant has presented such evidence and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Vasquez,* 572 F.3d at 591 (citing *Lingenfelter,* 504 F.3d at 1036)); *see also Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir.1991) ("[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."). The ALJ must state specifically which symptom testimony is not credible and what facts in the record support that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993).

At the same time, the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In evaluating the claimant's testimony, the ALJ may use "'ordinary techniques of credibility evaluation.'" *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n. 3 (9th Cir. 2010) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)). For instance, the ALJ may consider: (i) inconsistencies in the claimant's testimony or between the testimony and

15-cv-2357-GPC (DHB)

the claimant's conduct, *Turner*, 613 F.3d at 1224 n. 3; (ii) "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); and (iii) "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter*, 504 F.3d at 1040. While a claimant need not "vegetate in a dark room" in order to be eligible for benefits, *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) (citation omitted), the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *See Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999). Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *See Turner*, 613 F.3d at 1225; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).

Further, an ALJ may not disregard lay witness testimony without comment. *See Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). In order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness." *See id.* (citation omitted). The Social Security Regulations explain that in considering evidence from non-medical sources who have not seen the claimant in a profession capacity, it is appropriate for the ALJ to consider factors such as the "nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." *See* Social Security Ruling 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006).

      a.    **The ALJ Did Not Err in Discounting Plaintiff's Hearing Testimony**

The Court finds that the ALJ provided clear and convincing reasons for not crediting Plaintiff's symptom testimony that exceeded the objective evidence in the record, and therefore properly rejected said testimony. Plaintiff's main complaints are of right shoulder pain from tendonitis, hypertension, emotional distress, fatigue, and anxiety. Here, the ALJ

15-cv-2357-GPC (DHB)

found that "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 20.) However, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible." *Id.* Because the ALJ found Plaintiff met the first step of the test, and there is no evidence of malingering, the Court must determine whether the ALJ provided "specific, clear and convincing reasons" for his adverse credibility finding. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). The Court finds that he did.

With respect to Plaintiff's allegations of shoulder pain, the Courts finds the ALJ provided the following clear and convincing reasons for not crediting Plaintiff's symptom testimony: (1) the fact that Plaintiff's activities of daily living are inconsistent with the severity of the alleged impairment as Plaintiff cares for two dogs, prepares meals, does household chores, and drives. (A.R. 21.)

As to Plaintiff's hypertension, the Court finds the following reasons provided by the ALJ, in combination, are clear and convincing reasons for not crediting Plaintiff's symptom testimony: (1) the medical expert testified that Plaintiff's hypertension is easily controlled with simple medication; and (2) Plaintiff performed well and demonstrated strong cardiovascular functioning during her cardiac exercise test. *Id.*

Regarding Plaintiff's mental impairments, anxiety, and fatigue, the Court finds the following reasons provided by the ALJ, in combination, are clear and convincing reasons for not crediting Plaintiff's symptom testimony: (1) Plaintiff's activities of daily living are inconsistent with the severity of alleged impairments as Plaintiff handles personal care, household responsibilities, and personal finances; shops; cares for two dogs; and drives; (2) Plaintiff socializes with others via computer; (3) Plaintiff has a positive relationship with her mother; (4) Plaintiff has not recently sought mental health care; (5) Plaintiff does not consistently take antidepressants; and (6) two non-treating physicians and the medical expert opined that Plaintiff does not have severe mental impairments. *Id.*

Further, with respect to all of the above conditions, the Court finds Plaintiff's collection of unemployment is an additional clear and convincing reason for the ALJ to not

credit Plaintiff's symptom testimony. A claimant's receipt of unemployment benefits can be a legally sufficient reason to find a claimant not credible if the claimant considered herself capable of work and held herself out as available for work. *See Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988). However, a claimant's receipt of unemployment benefits does not necessarily constitute a legally sufficient reason for an adverse credibility determination when the record "does not establish whether [the claimant] held himself out as available for full-time or part-time work." *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161–62 (9th Cir. 2008).

Here, the ALJ noted that Plaintiff received unemployment benefits after the alleged disability onset date, and, in order to receive benefits, Plaintiff had to certify that she was "ready, willing, and able to work." (A.R. 20.) The ALJ further noted that, on June 30, 2014, Plaintiff told one of her physicians that she was working part-time. *Id.* Additionally, Plaintiff testified that, after the alleged onset date, she was "trying to get [her] old job back . . . . and was hoping [she] could work full-time." *Id.* at 35. The ALJ found that these factors demonstrated that Plaintiff has a "greater working capacity" than she alleged. *Id.* at 20. Because Plaintiff represented that she was capable of work and was seeking a full-time position after her alleged disability onset date, Plaintiff's collection of unemployment is an additional clear and convincing reason why the ALJ did not credit Plaintiff's symptom testimony.

In sum, the Court finds that the ALJ provided clear and convincing reasons in discounting Plaintiff's symptom testimony and set forth "findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (per curiam) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)). Accordingly, the Court must defer to the ALJ's credibility analysis. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.")

22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**b.** **The ALJ Did Not Err in Discounting Ms. Nigh's Lay Witness Statement**

Next, the Court finds that the ALJ provided germane reasons for discounting Ms. Nigh's witness statement and properly rejected said testimony. The ALJ considered but rejected Ms. Nigh's testimony, in part, because Ms. Nigh "opined substantially similar impairments and limitations as [Plaintiff]." (A.R. 20.) Because the ALJ provided clear and convincing reasons for rejecting Plaintiff's pain and symptom testimony, the ALJ has also provided germane reasons for rejecting Ms. Nigh's testimony. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [Mr.] Valentine's own subjective complaints, and because [Mr. Valentine's wife's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the wife's] testimony.") The ALJ also rejected Ms. Nigh's testimony as inconsistent with the evidence of the record. (A.R. 20.) "Inconsistency with medical evidence" is a germane reason for discounting lay witness testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005.) Thus, the Court finds the ALJ did not err in discrediting Ms. Nigh's witness statement.

**C.** **The ALJ Did Not Err in Omitting Mental Impairments in the Hypothetical Question Posed to the Vocational Expert**

**1.** **Parties' Arguments**

As noted above, Plaintiff argues that the ALJ failed to provide legitimate reasons for rejecting lay evidence regarding Plaintiff's mental impairments, including testimony about Plaintiff's inability to tolerate stress, get along with others, and concentrate. (ECF No. 11 at 16–17.) Had the ALJ credited Plaintiff's and Ms. Nigh's testimony, Plaintiff argues that the testimony would have supported a finding that Plaintiff has a severe mental impairment. *Id.* Thus, Plaintiff argues that the ALJ erred by failing to include Plaintiff's mental impairment in the hypothetical question posed to the vocational expert. *Id.*

23

1    For several reasons, Defendant argues that the ALJ properly determined that Plaintiff
2    has no severe mental impairment. (ECF No. 12-1 at 8–11.) First, Defendant argues that
3    "the ALJ's finding was supported by Plaintiff's activities of daily living." *Id*. at 9–10.
4    Second, Defendant argues that "the ALJ's finding was supported by Plaintiff's limited
5    mental health treatment history." *Id*. at 10. Lastly, Defendant argues that "the ALJ's finding
6    was supported by the State agency psychologists' opinions that Plaintiff's mental
7    impairments were non-severe." *Id*. at 10–11.

8    ### 2.   <u>Analysis</u>

9    Hypothetical questions posed to a vocational expert must consider all of the
10   claimant's limitations. *Bray v. Astrue*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas v.*
11   *Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). Further, "[t]he ALJ's depiction of the
12   claimant's disability must be accurate, detailed, and supported by the medical record."
13   *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). However, an ALJ need not include
14   in the hypothetical question any impairments that the ALJ has properly rejected. *Rollins v.*
15   *Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Magallanes v. Bowen*, 881 F.2d 747, 756–
16   57 (9th Cir. 1989).

17   For the reasons set forth above, the Court has already determined that the ALJ's
18   rejection of Plaintiff's symptom testimony regarding her mental impairments that exceeds
19   the objective evidence in the record was supported by specific, clear and convincing
20   reasons. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Further, the ALJ
21   rejected Ms. Nigh's lay opinion about Plaintiff's mental impairments for germane,
22   legitimate reasons. *See Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Therefore,
23   the ALJ did not need to include any mental impairments in the hypothetical question posed
24   to the vocational expert.[14]

25
26
27   _____
28   [14] The ALJ posed a second hypothetical question to the vocational expert that included as
     a limitation psychological problems that would cause a hypothetical claimant to be off task
     for twenty percent of the day. (A.R. 54.) However, in his written opinion, the ALJ only

24

## VI.  **CONCLUSION**

After a thorough review of the record in this matter and based on the foregoing analysis, this Court **RECOMMENDS** Plaintiff's motion for summary judgment be **DENIED**, Defendant's cross-motion for summary judgment be **GRANTED**, and the case be **DISMISSED.**

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c).

IT IS HEREBY ORDERED that **no later than** __February 17, 2017__, any party may file and serve written objections with the Court and serve a copy on all parties.  The documents should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed and served **no later than** __February 24, 2017__.  The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1156–57 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  February 3, 2017

LOUISA S PORTER
United States Magistrate Judge

---

discussed the first hypothetical question posed to the vocational expert. *Id.* at 23. The second hypothetical question appears to include mental impairments based on Plaintiff's testimony, which the ALJ later determined was not supported by objective evidence in the record. Therefore, in his written opinion, the ALJ did not need to rely on the vocational expert's answer to the second hypothetical question.

15-cv-2357-GPC (DHB)