1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH HOLLEN,<br><br>                          Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                          Defendant. | Case No.:  3:15-cv-2357-GPC-DHB<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION:**<br><br>**(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, [Dkt. No. 11]; AND**<br><br>**(2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT.  [Dkt. No. 12.]** |

## INTRODUCTION

On October 19, 2015, Plaintiff Deborah Hollen ("Plaintiff") filed a complaint pursuant to § 405(g) of the Social Security Act ("Act"), seeking judicial review and remedy of the final decision of the Commissioner of the Social Security Administration ("Defendant" or "Commissioner") in a claim for disability insurance benefits under Title

////
////
////
////
////

1

II of the Act.  42 U.S.C. § 405(g). [1]  Dkt. No. 1, Compl.  On January 4, 2016, Defendant filed an answer and the administrative record ("AR").  Dkt. Nos. 8, 9.  On February 17, 2016, Plaintiff filed a motion for summary judgment seeking reversal of Defendant's denial of disability benefits or, alternatively, remand for further administrative proceedings.  Dkt. No. 11.  On March 25, 2016, Defendant filed a cross motion for summary judgment and an opposition to Plaintiff's motion for summary judgment.  Dkt. Nos. 12 & 13.  Plaintiff filed a response and a reply on April 12, 2016.  Dkt. Nos. 14 & 15.

On February 3, 2017, Magistrate Judge Louisa S. Porter issued a report and recommendation ("Report") recommending Plaintiff's motion for summary judgment be **DENIED**, that Defendant's cross-motion for summary judgment be **GRANTED**, and that the case be dismissed.  Dkt. No. 16.  No objections were filed.  After careful consideration of the pleadings and supporting documents, this Court **ADOPTS** in full the Magistrate Judge's report.

## PROCEDURAL BACKGROUND

On June 5, 2013, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, claiming disability beginning on December 1, 2011.  AR 15, 30, 159–168. [2]  Plaintiff's claims were denied at the initial level and again upon reconsideration.  *Id*. at 15, 85–89, 91–96.

On November 6, 2014, Plaintiff appeared with counsel and testified before an Administrative Law Judge ("ALJ").  *Id*. at 28–56.  On January 5, 2015, the ALJ issued a

---

[1] Plaintiff's complaint invoked the Courts jurisdiction to "review a decision of the Commissioner of Social Security denying Plaintiff's Application for Social Security Disability benefits [Title II and Supplemental Security Income benefits [Title XVI] for lack of disability."  Compl. at 1.  However, after a careful review of the record, this Court found the Plaintiff never requested Supplemental Security Income Benefits.  Therefore, this Court focused its review solely on the Commissioner's decision to deny Plaintiff Social Security Disability benefits under Title II of the Act.

[2] All citations to the administrative record are based upon the pagination imprinted by the Social Security Administration.

written decision, finding the Plaintiff was not disabled under the Act. *Id*. at 15–23. The Appeals Council denied Plaintiff's request to review, and the ALJ's decision became the final decision of the Commissioner on September 24, 2015. *Id*. at 1–6.

On October 19, 2015, Plaintiff commenced the instant action seeking judicial review of the Commissioner's decision. Compl. On February 17, 2016, Plaintiff filed her motion for summary judgment requesting the Court reverse Defendant's denial and award disability benefits or, alternatively, remand for further administrative proceedings. Dkt. No. 11. Plaintiff argues that the ALJ committed reversible error by: (1) failing to summarize the opening statement and/or relevant testimony on the record for the medical expert ("ME") prior to eliciting the ME's testimony (Dkt. No. 11 at 7–10);[3] (2) failing to properly consider lay evidence (*id.* at 10–13); and (3) failing to include the Plaintiff's manifestations of mental impairment in the hypothetical question posed to the vocational expert ("VE") (*id.* at 13–14).

On March 25, 2016, Defendant filed a cross-motion for summary judgment, and its opposition to Plaintiff's motion for summary judgment. Dkt. Nos. 12 & 13. On April 12, 2016, Plaintiff filed her response in opposition to Defendant's motion for summary judgment, and her reply to Defendant's opposition. Dkt. Nos. 14 & 15.

On February 3, 2017, Magistrate Judge Porter issued a report and recommendation recommending the Court deny Plaintiff's motion for summary judgment, grant Defendant's cross-motion for summary judgment, and dismiss the case. Dkt. No. 16.

////
////
////
////
////

---

[3] All citations to the record therein are based upon the pagination imprinted by the CM/ECF system.

# **FACTUAL BACKGROUND**

Plaintiff alleges disability as of December 1, 2011.  AR 15, 30, 57, 143, 159.  In her application, she claims disability due to: (1) Valvular Heart Disease; (2) High Blood Pressure; (3) Anxiety; (4) Depression; (5) Pre-Diabetic conditions.  *Id.* at 57, 162.  Plaintiff subsequently complained of difficulty raising her right hand above her head, and was diagnosed with rotator cuff tendonitis on April 9, 2013.  Dkt. No. 11 at 2–3.

## *I.    PERSONAL HISTORY*

Plaintiff was fifty-eight years old when she appeared before the ALJ.  AR 32.  She completed high-school, and attended some college but never earned a degree.  *Id.*  From 2000 to 2001, Plaintiff ran her own business selling ad-space on restaurant placements; she worked as a telephone solicitor from 2003 to 2004; was a pre-school teacher's aide in 2004; worked as a Mortgage Loan Processor from June 2006 to August 2008; and finally was an in-store marketer from November 2010 to December 2011.  *Id.* at 47–53, 164, 200–204.  She stopped working in 2011 after going through a divorce and having an emotional meltdown at work.  *Id.* at 34–35, 175.  She collected unemployment from 2011 to 2013, and certified she was "ready, willing, and able to work" to the unemployment office during those two years.  *Id.* at 35.  Plaintiff told one of her treating physicians that she was working part-time as of June 2014.[4]  *Id.* at 44, 350.

## *II.    MEDICAL EVIDENCE*

### *a.  Treating Physician Evidence*

#### **i.  Adla Tessier, M.D.**

On December 16, 2011, Plaintiff visited Dr. Adla Tessier, an internist.  AR 272.  Dr. Tessier noted Plaintiff suffered from bouts of Clinical Depression since 2006, and her recent divorce had worsened her condition.  *Id.*  Plaintiff felt she was unable to

---

[4] During the hearing, the testifying medical expert discussed this discrepancy, and notified the ALJ that further questioning into claimant's part-time work may be warranted.  AR 44.  The ALJ chose not probe into the claimant's part-time work, so there is no indicia within the record regarding what work, exactly, the claimant performed in 2014.

concentrate on her work, and requested Dr. Tessier approve her for disability. *Id.* Though Plaintiff was prescribed Wellbutrin to manage her depression, Plaintiff did not regularly take her medication as she felt it did not work. *Id.* Dr. Tessier thus felt it best to defer management for her depression to a psychiatrist. *Id.* Dr. Tessier told the Plaintiff she could only approve disability for three weeks, and she would have to see a psychiatrist. *Id.* Dr. Tessier noted that, though tearful, Plaintiff did not seem to be in any apparent distress. *Id.*

### ii.  Courtney Summers, M.D.

On July 11, 2012, Plaintiff saw Dr. Courtney Summers, who specializes in family medicine, regarding a mole. AR 302. Plaintiff stated she was prescribed Wellbutrin to treat her depression and anxiety, but refused to take it regularly; instead she had begun buying Valium from Mexico. *Id.* at 303–4. Dr. Summers referred Plaintiff to psychiatry. *Id.* at 304.

On August 29, 2012, Plaintiff visited Dr. Summers to remove the mole. *Id.* at 300. Though it had not changed, Plaintiff was moving to Rosarito and wanted it checked before leaving. *Id.* Plaintiff also requested Valium, or "something to help with anxiety." *Id.* Plaintiff refused to follow-up on the previous referral, and Dr. Summers refused to prescribe Valium until Plaintiff saw a psychiatrist. *Id.* Dr. Summers reported Plaintiff had continued buying Valium from Mexico, and was still not regularly taking Wellbutrin. *Id.* She also noted Plaintiff was well groomed, and not in acute distress. *Id.*

On March 14, 2013, Plaintiff saw Dr. Summers regarding a lump on her right shoulder, and a problem extending her right arm above her head. *Id.* at 296. Dr. Summers noted a small lump on her right shoulder, and some pain with overhead extension. *Id.* at 297. She referred plaintiff to radiology for an MRI and X-Ray. *Id.* at 297. Dr. Summers additionally noted Plaintiff had not been taking any medicine to control her hypertension. *Id.* at 296. On April 26, 2013, Plaintiff visited Dr. Summers for a sore throat and congestion. *Id.* at 294. Dr. Summers noted an MRI from earlier that month showed rotator cuff tendinosis. *Id.* She referred Plaintiff to physical therapy. *Id.*

On July 03, 2013, Plaintiff visited Dr. Summers regarding Plaintiff's disability paperwork. *Id*. at 292. Dr. Summers explained that Plaintiff's shoulder would improve with physical therapy and/or surgery, so it was not clear whether the tendionosis constituted a permanent disability. *Id*. Additionally, Dr. Summers explained that she never treated Plaintiff's depression or anxiety, and was unwilling to fill out any forms relating to Plaintiff's mental state. *Id*. Dr. Summers asked Plaintiff to begin Wellbutrin again, and visit in a month. *Id*. at 293. She also noted Plaintiff was cooperative, alert, well-nourished, and not in acute distress. *Id.*

On October 17, 2013, Plaintiff visited Dr. Summers after suffering from abdominal pain. *Id*. at 366. Plaintiff worried she had liver cancer, and Dr. Summers referred her to get an ultrasound. *Id*. Plaintiff reported she had not used Valium in five days, but intended to wean herself off of the drug. *Id.* Dr. Summers advised she was outside of the acute withdrawal period and could simply quit taking Valium. *Id*. at 367.

On December 02, 2013, Plaintiff visited Dr. Summers, and complained of dull chest pressure that occasionally radiates into her left arm. *Id*. at 362. Dr. Summers referred her to a cardiologist, and requested Plaintiff begin taking her anti-hypertensive medicine. *Id*. at 363.

On April 7, 2014, Plaintiff complained to Dr. Summers about fatigue, a decreased appetite, and exhaustion. *Id*. at 352. Plaintiff told Dr. Summers she cannot work, and requested disability forms for her lawyer. *Id.* Dr. Summers noted the fatigue had existed since Plaintiff became her patient, and she suspected it was related to Plaintiff's untreated psychological issues. *Id*. at 353. Dr. Summers noted Plaintiff was alert and cooperative, but still refused any therapy or medication to help her depression. *Id.*

On June 30, 2014, Plaintiff visited Dr. Summers regarding muscle pain and stiffness. *Id*. at 350. Plaintiff reported a family history of a mitochondrial disorder that causes muscle stiffness. *Id.* Plaintiff also told Dr. Summers she was living in the United States again, and working part time. *Id.* Though Dr. Summers could not find any problems with the Plaintiff, she referred Plaintiff to a rheumatologist. *Id*. at 351.

### iii.  Mariusz Wysoczanski, M.D.

After Plaintiff complained of chest pains, Dr. Summers referred her to a cardiologist, Dr. Mariusz Wyzoczanski.  AR 362–63.  Plaintiff visited Dr. Wyzoczanski on February 18, 2014.  AR 354, 358.  Dr. Wyzoczanski discovered a very small, generalized pericardial effusion, but noted it had nearly resolved.  *Id*. at 359.  Dr. Wyzoczanski stated Plaintiff was not taking her anti-hypertension medicine, and asked her to take it before returning for a follow-up.  *Id.* Plaintiff visited Dr. Wyzoczanski again on February 25, 2014, and stated she suffered chest discomfort and dyspnea when she exerted herself.  *Id.*  He scheduled a stress test, which the Plaintiff completed on March 19, 2014.  *Id.*  Dr. Wyzoczanski found no evidence of ischemia, and further noted Plaintiff's hypertension normalized after she began taking her medication.  *Id*. at 354–55, 359.

### iv.  Roshan Kotha, M.D.

Dr. Summers referred to Dr. Roshan Kotha, a rheumatologist, on August 4, 2014.  AR 346.  Plaintiff complained about muscle stiffness, particularly around her tendons.  *Id.*  Dr. Kotha noted a current strength of "5/5" but referred her for further testing.  *Id*. at 348.

Plaintiff returned on September 8, 2014, to follow-up.  *Id*. at 343.  Dr. Kotha noted Plaintiff could not raise her right arm completely above her head, but she again showed a current strength of "5/5," and likely did not have inflammatory myositis at that time.  *Id*. at 345.  Dr. Kotha noted a possible myalgia or myositis, but chose to refer Plaintiff to a neuromuscular clinic for a second opinion prior to performing a muscle biopsy.  *Id*. at 345.  The record does not indicate whether Plaintiff visited the clinic.

### b.  *Non-Treating Psychiatrist Evidence*

### i.  Robert A. McAuley, M.D.

On September 9, 2013, Plaintiff's initial claim was assessed by Dr. Robert A. McAuley, a reviewing psychiatrist for the Department of Disability Services ("DDS").  AR 60.  Dr. McAuley noted her mental condition is situational, and she is otherwise

completely capable of caring for herself, her mother, and her grandchild.  *Id*. at 62.  Dr. McAuley also saw that Plaintiff was diagnosed with clinical depression in 2011, but otherwise did not present with complaints of depression until 2013.  *Id*.  As Plaintiff's anxiety and depression were adequately treated, Dr. McAuley concluded they were presently non-severe.  *Id*.

### ii.  H. Skopec, M.D.

Plaintiff requested the SSA reconsider her initial claim, and reported a worsening in all conditions, including her depression and anxiety.  AR 69.  On October 24, 2013, Dr. Skopec noted there was no new medical evidence, and her old medical records showed she could regularly travel between the United States and Mexico, care for her grandchild, and help her mother.  *Id*. at 73.  Accordingly, Dr. Skopec affirmed Dr. McAuley's decision that Plaintiff's mental impairment was non-severe.  *Id*.

### c. *Non-Treating Physician Evidence*

### i.  A. Lizarraras, M.D.

On August 20, 2013, Dr. Lizarraras reviewed the Plaintiff's physical complaints presented in her initial claim.  AR 63.  Dr. Lizarraras believed Plaintiff could occasionally lift and carry twenty pounds; (2) frequently lift and/or carry up to ten pounds; (3) stand and/or walk with normal breaks for six hours at a time; and (4) sit with normal breaks for six hours at a time.  *Id*.  While Dr. Lizarraras also noted Plaintiff had limited reach overhead, he concluded her right shoulder tendonosis would heal with physical therapy and time, and concluded she was not disabled.  *Id*. at 64.

### ii.  M. Ormsby, M.D.

After Plaintiff's initial denial, she filed additional medical evidence relating to her alleged physical maladies, and requested the SSA reconsider its determination. AR 73. On October 28, 2013, Dr. Ormsby, an internist, reviewed her old medical records, Dr. Lizarraras' initial disability determination, and considered the new medical evidence, which included an MRI of Plaintiff's right shoulder.  *Id*.  Nevertheless, Dr. Ormsby felt this new evidence did not warrant upending the prior decision.  *Id*.  Accordingly, Dr.

8

Ormsby affirmed Dr. Lizarraras' findings that Plaintiff is able to perform light work, with limited overhead reach.  *Id.*

### III.   Disability Hearing

#### a.  Plaintiff's Testimony

Plaintiff testified that her biggest problem was "some kind of muscular disease," though the doctors did not know the exact diagnosis.  AR 36.  She stated this disease makes her extremely stiff, and she is constantly exhausted. *Id*. at 36–37.  Additionally, Plaintiff referenced her emotional problems from 2011, and stated her mental impairments have kept her from working.  *Id*. at 34–35.

Plaintiff states that, despite her physical limitations, she is able to help her mother carry out the trash, check the mail, and tidy around the house.  *Id*. at 37–8.  Plaintiff also performs chores, cooks, washes her laundry, regularly bathes, dresses herself, and runs errands, though she reports some difficulty with directions.  *Id*. at 38–39.  Plaintiff testified she could sit for an hour or two before her neck hurts, stand for around forty-five minutes to an hour, and had no trouble walking.  *Id*. at 39–40.

Emotionally, Plaintiff testified she had "become more of a loner."  *Id*. at 40.  While she used to go out with friends and regularly attend church services, she had not done either in a while.  *Id*. at 40–41.  Plaintiff noted, though, she regularly visits and cares for her grandson, and occasionally goes out with her mother.  *Id*. at 41.  Additionally, Plaintiff is prescribed antidepressants but refuses to take them as her medication makes her "feel delusional [and] a little crazy."  *Id*. at 40.  Plaintiff does not regularly see a psychiatrist or psychologist.  *Id.*

#### b.  Medical Expert Testimony

The ALJ took testimony from Edwin Bryan, M.D., who reviewed Plaintiff's medical records for possible physical and mental impairment.  AR 42–43.  Dr. Bryan found that, physically, Plaintiff suffered from hypertension, but her condition was well-controlled with medication, and her cardiac function was otherwise very good.  *Id*. at 43. He also noted she does have some limitation in her right shoulder, but remarked it did not

significantly impair her in any way.  *Id.*  Finally, Dr. Bryan noted she saw a rheumatologist for some muscle problems, but there were no specific findings.  *Id.*

Mentally, Dr. Bryan found Plaintiff's medical record hinted at alcohol abuse.  *Id*. at 44.  There was also evidence of depression and anxiety throughout the record, but Dr. Bryan did not have "any psychiatric, specific evaluation."  *Id.*  Plaintiff's counsel questioned Dr. Bryan's evaluation of Plaintiff's mental state, but Dr. Bryan stated he could not "make a full assessment of [Plaintiff's] mental status without examination;" rather Dr. Bryan was just interpreting her medical record.  *Id*. at 45–46.

### c.  Vocational Expert Testimony

Finally, the ALJ took testimony from Erin Welsh, a vocational expert.  AR 47.  After asking Plaintiff a few questions about her work history, Ms. Welsh found plaintiff previously worked as a: (1) retail sales associate, which is a semi-skilled profession with a light exertion level, requiring a specific vocational preparation ("SVP") rating of three[5] (*id*. at 49) ; (2) teacher's aide, another semi-skilled profession with a light exertion level and an SVP three rating (*id*. at 53); (3) telephone solicitor, a semi-skilled, sedentary profession with an SVP three rating (*id.*); and (4) mortgage loan processor, a skilled, sedentary profession with an SVP five rating (*id*.).[6]

The ALJ then requested the VE to consider a hypothetical claimant with the Plaintiff's same age, experience, and education who could: (1) sit for six hours in an eight-hour workday; (2) stand or walk six hours in an eight-hour workday; (3) occasionally or frequently lift ten pounds; (4) occasionally climb stairs; (5) occasionally balance, stoop, kneel, crouch, and crawl; (6) occasionally use her arm to reach overhead; (7) never climb ladders, scaffolds, or ropes.  *Id*. at 53–54.  The ALJ asked whether that

---

[5] Jobs with an SVP rating of three require up to three months of training.  Social Security Administration, Program Operations Manual, Section DI 25001.001: Quick Reference Guide, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001#b79.

[6] That job normally has an SVP rating of eight, requiring four to ten years of training.  *Id.*  However, because she did not require any licenses at the time, the VE found the job only needed six months to one year of training, which warrants an SVP 5 rating.  AR 49.

hypothetical claimant could return to any of the Plaintiff's past jobs, and the VE answered "all past work would fit within that hypothetical." *Id*. at 54. The ALJ then asked whether that same hypothetical claimant could perform Plaintiff's past work if she was also off-task twenty percent of the day due to psychological problems. *Id*. The VE responded that, with those psychological limitations, the claimant could not perform Plaintiff's past jobs, or any jobs in the labor market. *Id*.

## IV. The ALJ's Findings

ALJ Keith Dietterle rendered his decision on January 5, 2015, and found the claimant was "not disabled under sections 216(i) and 223(d) of the Social Security Act." AR 23. Judge Dietterle performed a five-step sequential evaluation to determine whether Plaintiff was disabled. *Id*. at 16.

At step one, Judge Dietterle found the claimant had not engaged in substantial, gainful activity since December 1, 2011. *Id*. at 17. At step two, Judge Dietterle concluded that Plaintiff's hypertension and right shoulder tendonitis more than minimally affected the Plaintiff's ability to perform basic work, and were therefore severe. *Id*.

However, Judge Dietterle classified Plaintiff's mental condition as non-severe. *Id*. at 18. In making this finding, the ALJ considered four broad functional areas used to evaluate mental disorders: (1) daily living; (2) social functioning; (3) concentration, persistence, or pace; (4) mental decompensation. *Id*. The ALJ reviewed the reports of both DDS mental health evaluators, and found they reported only mild limitations as to areas one through three; a finding supported by Plaintiff's own testimony regarding her daily activies. *Id*. As there was no recent psychiatric hospitalizations or evidence of mental health deterioration, there was no limitation in area four. *Id*. Thus, the ALJ concluded, the Plaintiff's mental impairment was non-severe. *Id*.

At step three, the Judge Dietterle concluded that Plaintiff did not have an impairment, or combination of impairments, that met the severity of one of the Act's listed impairments. *Id*. at 19. Plaintiff's joint pain did not affect her fine or gross

////

movements, as evidenced by her ability to do chores.  *Id.*  Further, her hypertension was well-controlled with medicine and did not affect any underlying conditions.  *Id.*

At step four, Judge Dietterle considered the entire record and assessed the Plaintiff's residual function capacity.  *Id.* at 19.  After careful consideration of the record, he concluded Plaintiff could perform light work, "including occassionaly lifting and/or carrying 20 pounds and frequently lifting and/or carrying 10 pounds."  *Id.*  Additionally, he found Plaintiff can sit, stand, and walk for six hours in an eight hour workday, but cannot use her right arm to reach overhead.  *Id.*

Finally, at step five, Judge Dietterle considered the Plaintiff's own testimony, a report written by the Plaintiff's mother, and all of the medical testimony and evidence, ultimately concluding that neither Plaintiff's physical nor mental limitations precluded her from performing past, relevant work.  *Id.* at 19–23.

## LEGAL STANDARD

### I.   Standard of Review of Magistrate Judge's Report and Recommendation

In reviewing a Magistrate Judge's Report and Recommendation,"[a] judge of the court shall make a de novo determination of those portions of the report . . . to which objection is made."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b); *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989).  However, in the absence of timely objection, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72 advisory committee's notes.  When no objections are filed, a district court may assume the correctness of the magistrate judge's findings and recommendations, and decide the motion on the applicable law.  *Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974); *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).

### II.   Standard of Review for Commissioner's Final Agency Decision

Section 205(g) of the Act permits unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. § 405(g).  The reviewing court may enter a judgment affirming, modifying, or reversing the Commissioner's decision, and

may also remand the matter to the Social Security Administrator for further proceedings. *Id.*

The scope of the reviewing court is limited; it may only "set aside the ALJ's denial of benefits . . . when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (internal quotations omitted). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. SSA*, 466 F.3d 880, 882 (9th Cir. 2006). However, "[e]ven if the evidence is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonable drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).

### III.   *Determination of Disability*

In order to qualify for disability benefits under the Act, an applicant must show that: (1) she suffers from a medically determinable impairment that can be expected to result in death, or which lasted, or can be expected to last, for a continuous period of twelve months or more; and (2) the impairments renders the applicant incapable of performing the type of work that the applicant previously performed, and incapable of performing any other substantially gainful employment within the national economy. 42 U.S.C. § 423(d)(1). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* 423(d)(3).

The ALJ employs a sequential, five-step process to determine whether an applicant is disabled under the Act. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). They are set out as follows:

(i)     At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled . . .

(ii)   At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled . . .

(iii)   At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled . . .

(iv)   At the fourth step, we consider our assessment of your residual function capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled . . .

(v)   At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled . . . .

20 C.F.R. § 404.1520(a)(4)

If the ALJ finds that an applicant is not disabled at any step, he may make his determination as to that condition and need not proceed to the next step.  20 C.F.R. § 404.1520(a)(4).  "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1222 (9th Cir. 2009).  At steps four and five, The ALJ determines a claimant's residual functional capacity ("RFC"), which is the most a claimant can still do considering "all relevant medical and physical evidence in [the] case record" and any "limiting effects caused by medically determinable impairments." *Garrison*, 759 F.3d at 1011 (9th Cir. 2014).  Additionally, the ALJ may "'call upon a [VE] to testify as to: (1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such

14

1  jobs in the national economy.'" *Id.* (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th
2  Cir. 1999).

3  ## DISCUSSION

4  Plaintiff's motion for summary judgment argues that the ALJ erred by failing to (1)
5  "apply mandated procedure in taking testimony from the medical expert" (Dkt. No. 11 at
6  7–10); (2) "properly consider the lay evidence of record" (*id.* at 10–13); and (3) "consider
7  all of claimant's impairments in determining her RFC" (*id.* at 13–14).

8  Defendant's cross-motion countered by arguing the ALJ did not err, as (1) the
9  Social Security Agency's ("Agency") procedure for eliciting medical expert testimony is
10 not legally binding on the ALJ (Dkt. Nos. 12 & 13 at 2–5); (2) the ALJ properly
11 considered the lay testimony of the Plaintiff and her mother, and provided germane
12 reasons based on substantial evidence for rejecting those statements (*id.* at 5–7); and (3)
13 the ALJ properly found the Plaintiff's medical impairments were non-severe, and was not
14 obligated to include Plaintiff's mental limitations in his RFC (*id.* at 7–10).

15 Plaintiff responded by arguing (1) agency procedure became binding after Social
16 Security Ruling ("SSR") 13-2P was issued in March 22, 2013 (Dkt nos. 14 & 15 at 2–3);
17 (2) Defendant's counsel improperly substituted her own rationale for the rationale of the
18 ALJ (*id.* at 4); and (3) the ALJ failed to consider the Plaintiff's "true activities of daily
19 living," as elucidated in her testimony (*id.* at 5–6).

20 The Magistrate Judge found that the ALJ did not err.  Dkt. No. 16 at 14.  This
21 Court agrees for the reasons set forth below.

22 ## I.    *The ALJ properly elicited testimony from the testifying medical expert.*

23 ### a.  **HALLEX procedures are neither binding nor enforceable.**

24 Plaintiff first argues that the ALJ must follow an Agency-mandated procedure for
25 procuring testimony from a medical expert.  Plaintiff cites specifically to Social Security
26 Ruling 13-2p, which states the Agency requires "all adjudicators at all levels of
27 administrative review to follow agency policy, as set out in in the commissioners
28 regulations . . . and other instructions, such as . . . the Hearings, Appeals, and Litigation

Law manual (HALLEX)." Dkt. No. 11 at 11.  Plaintiff then quotes an outdated version of HALLEX § I-2-5-39, which stated "the ALJ must . . . summarize the opening statement or relevant testimony on the record if ME was not present" during the entire hearing. [7]

Defendant responded by arguing HALLEX "does not carry the force of law and is not binding upon the agency or the court," citing *Lockwood v. Comm'r Soc. Sec.*, 616 F.3d 1068, 1072 (9th Cir. 2010).  Dkt. Nos. 12 & 13 at 3.

Plaintiff's opposition argued *Lockwood* is no longer binding as it was decided prior to SSR 13-2p and, after that ruling, agency policy "is now mandatory for the ALJ and must be followed."  Dkt. Nos. 14 & 15 at 2.

### i. Magistrate Judge's Findings

The Magistrate Judge found "no authority demonstrating that the Ninth Circuit's position on HALLEX [was] overturned or abandoned . . . [r]ather, the Ninth Circuit recently reiterated that the Social Security Administration's agency policy 'does not impose judicially enforced duties on either this court or the ALJ.'" Dkt. No. 16 at 17 (quoting *Withrow v. Colvin*, _ Fed. App'x _, 2017 WL 34529, at *2 (9th Cir. Jan. 4, 2017)).  Accordingly, the Magistrate Judge held circuit precedent establishing that internal Agency regulations have no force of law still stands, and "there is no judicially enforceable duty for the ALJ to summarize Plaintiff's hearing testimony for Dr. Bryan prior to Dr. Bryan's testimony."  *Id.* at 17.

////

---

[7] Plaintiff accidently quoted § I-2-5-39 as it appeared after the SSA updated HALLEX on April 29, 1994.  *See* HALLEX Transmittal No. I-2-28, https://www.ssa.gov/OP_Home/hallex/TS/tsi-2-28.html ("I-2-539 [sic] has been revised to clarify that an ME who is called to testify at a hearing is not required to attend the entire hearing, but, if not, the ALJ is required, before the ME testifies, to summarize on the record any part of the opening statement or relevant testimony that the ME missed.")  That section was eventually consolidated with § I-2-6-70 (1993 WL 751901) and, as the magistrate judge noted, § I-2-5-39 presently states "[w]hen an administrative law judge (ALJ) obtains a medical expert (ME) opinion during a hearing, the ALJ will generally explain *why the ME is present* before his or her opening statement."  Dkt. No. 16 at 16 (*citing* 1994 WL 637374) (emphasis added).

### ii. Analysis and Review

The Magistrate Judge is correct; "HALLEX does not impose judicially enforceable duties on either the ALJ or this court." *Lockwood*, 616 F.3d at 1072.  No authority has ever found the Ninth Circuit's position on HALLEX was overturned, and Plaintiff's assertion that SSR 13-2P mandates that ALJs follow HALLEX procedures is erroneous.

Social Security Rulings "represent . . . statements of policy and interpretations . . . [but] do not carry the 'force of law.'" *Bray*, 554 F.3d at 1224.  Rather, they are only binding as far as the interpretation is applicable to the facts underlying an ALJ's decision. *Id.*

Despite Plaintiff's arguments to the contrary, SSR 13-2P carries no substantive policy interpretations applicable to the facts of her case.  Rather, SSR 13-2P is a policy ruling clarifying how the Agency determines "whether drug addiction is a contributing factor material to the determination of disability." 78 Fed. Reg. 11939, 11941 (Mar. 22, 2013).  As Plaintiff does not claim the ALJ improperly applied the Plaintiff's drug or alcohol dependence in his disability determination, SSR 13-2p is not binding.  *See Martinez v. Colvin*, Case No. 14cv1703-MC, 2016 WL 1054497, at *5 (D. Or. Jan. 20, 2016) ("Plaintiff made no claims that there were misinterpretations of policies relating to drug addiction and alcoholism in this case. Therefore, SSR 13-2P is inapplicable here and does not change this Court's application of *Lockwood*.")

Accordingly, as SSR 13-2P does not mandate the ALJ follow HALLEX procedures, the ALJ did not err by refusing to summarize Plaintiff's subjective testimony for the ME.

### b. The ALJ did not err by assigning great weight to the ME's testimony.

Plaintiff then argues that, as the ME's testimony is "not based on a proper foundation (all of the evidence)," the ALJ gave the ME's opinion far too much weight. Dkt. No. 11 at 12.  Plaintiff believes that, had the ALJ summarized the Plaintiff's subjective symptoms for Dr. Bryan prior to taking his testimony, Dr. Bryan would never have opined that "nothing in the record . . . would prevent work activity at the sedentary

or light work level." *Id*. at 12.  But, as the ALJ never laid the proper foundation, Plaintiff argues the ALJ subsequently erred in assigning great weight to Dr. Bryan's testimony. *Id.* at 10.

Defendant responds that the ALJ properly relied on Dr. Bryan's testimony, as the doctor's opinon was both relevant and consistent with the evidence on record.  Dkt. Nos. 12 & 13 at 3–4.  Further, Defendant argues that the ALJ did not rely solely on Dr. Bryan's opinion in evaluating Plaintiff's alleged disability; instead, the ALJ reviewed the Plaintiff's testimony, the overall record, and the opinions of DDS medical consultants before concluding Plaintiff was not disabled.  *Id.* at 4.

### i.  Magistrate Judge's Findings

As the Magistrate Judge notes "Plaintiff appears to take issue with the ALJ's conclusion that she has no severe mental impairments."  Dkt. No. 16 at 17.  However, the Magistrate Judge noted that "[f]indings of non-treating physicians can amount to substantial evidence in support of the ALJ's determinations, so long as other evidence in the record supports those findings."  *Id.* at 17–18 (citing *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996)).  After reviewing the record, the Magistrate Judge found that the ALJ's determination was supported by substantial evidence.  *Id.* at 18.

### ii.  Analysis and Review

Generally, the ALJ will give more weight to medical opinions that are : (1) "from [a claimant's] treating sources;" (2) consistent with the record as a whole; and (3) from "a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."  20 C.F.R. § 404.1527(c).  "The opinion of an examining doctor . . . if contradicted by another doctor, can only be rejected for specific and legitimate reasons."  *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010).  However, if the treating physician failed to give an opinion, or the treating physician's opinion does not conflict with the non-treating physician's opinion, that burden is not triggered.  *See Arago v. Astrue*, 2010 WL 1948620, at *4 (N.D. Cal. May 13, 2010), *aff'd*, 457 F. App'x 700 (9th Cir. 2011) ("[T]o reject the opinion of a

treating physician in favor of a conflicting opinion . . . an ALJ . . . must make findings setting forth specific, legitimate reasons . . . based on substantial evidence in the record . . . [but] the above burden is not triggered [when] there is no conflict with a treating physician's opinion.") (internal quotations omitted).

Examining the record as a whole, it appears that Plaintiff never sought regular treatment for her mental impairment.  Neither Dr. Tessier nor Dr. Summers, her treating physicians of record, specialize in mental illness.  Additionally, neither offered any medical opinions regarding Plaintiff's mental impairment; Dr. Summers specifically refused to do so as she never addressed Plaintiff's mental illness.  *Id*. at 292.  Thus, the ALJ properly moved on to other evidence, including the testimony of Dr. Bryan.  *Id*. at 21.

Dr. Bryan's opinion that "the evidence from the record supported mental health limitations [was] given great weight," as he had an opportunity to review the record, and his opinion was supported "by the activities of daily living . . . and lack of mental health treatment."  *Id*. at 22.  The ALJ also considered the opinions of two DDS psychiatrists that specialized in mental health, and gave "those opinions great weight because they are consistent with the lack of mental health treatment history, [Dr. Bryan's] opinion, and provide a thorough explanation on how [they] reached [their] conclusions."  *Id*. at 22.

Neither the ALJ's findings nor the record indicate that the ALJ gave improper weight to the opinions of non-treating physicians.  Rather, he appropriately relied on those opinions, and the record as a whole, in lieu of any evidence from a treating physician, and concluded the Plaintiff's mental impairments were non-severe.

## II.    *The ALJ Properly Considered all Lay Evidence.*

Plaintiff asserts the ALJ erred by rejecting Plaintiff's lay evidence as to her physical and medical conditions, and by failing to give an adequate reason for his rejection. Dkt. No. 11 at 15.  Plaintiff points specifically to two pieces of lay evidence the ALJ failed to consider: (1) Plaintiff's own, subjective testimony as to her physical and

mental maladies; and (2) a function report filled out by Plaintiff's mother, Dorothy L. Nigh, which was filed with Plaintiff's original claim.  *Id.*

### a.  Plaintiff's subjective complaints and testimony.

Plaintiff contends that the ALJ erred in discounting her testimony that she is stiff throughout her body and is exhausted, that she lays down 3-4 times a day, does minimal chores, and though she is able to drive, she finds herself getting confused.  Dkt. No. 11 at 14.  As noted by the Magistrate Judge, Defendant did not address the issue "likely due to the confusing nature of Plaintiff's argument."  Dkt. No. 16 at 18.

### i.  Magistrate Judge's Findings

The Magistrate Judge first established that, if the ALJ chooses to disregard a claimant's subjective symptom testimony, he must state specifically what parts of the testimony are not credible and "what facts in the record support that conclusion."  Dkt. No. 16 at 19 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).  Though "[i]n evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility determination.'"  *Id.* (quoting *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)).  The Magistrate Judge then walked through each of the Plaintiff's complaints, and identified the specific, clear, and convincing reasons why the ALJ discounted the Plaintiff's testimony.

Plaintiff's allegations of shoulder pain were discounted due to a clear inconsistency between the alleged impairment and the fact she was capable of caring for two dogs, preparing meals, doing household chores, and driving.  Dkt. No. 16 at 21.  Lay testimony related to Plaintiff's hypertension was discounted as the ALJ found clear and convincing evidence showing the illness is easily treated with medication, and that Plaintiff performed well during a cardiac exercise test.  *Id.*

Finally, the ALJ discounted lay testimony of Plaintiff's mental wellness because her activities of daily living are inconsistent with the severity of her impairments.  *Id.* She socializes with others on the computer, she has a positive relationship with her mother, she has not recently sought mental health care, she does not consistently take

antidepressants, and all of the offered medical opinions opined that Plaintiff did not have severe mental impairments. *Id.*

The Magistrate Judge additionally states the "collection of unemployment is an additional clear and convincing reason for the ALJ to not credit Plaintiff's symptom testimony." *Id.* Thus, taking all of these pieces of evidence in sum, the Magistrate Judge found the ALJ provided clear and convincing reasons to discount Plaintiff's lay testimony. *Id.* at 22.

### ii.  Analysis and Review

The ALJ considers all evidence presented, including the claimant's "statements about [her] symptoms . . . and observations by . . . other persons." 20 C.F.R. § 404.1529(c)(3).  Evaluating the credibility of the claimant's subjective testimony first requires the ALJ first determine whether the claimant has provided "objective medical evidence of an underlying impairment which might reasonably be expected to produce the pain or other symptoms alleged." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015).  If the claimant satisfies the first prong, and there is no affirmative evidence of malingering, the ALJ may only reject the claimant's testimony for "specific, clear, and convincing reasons." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

"To support a lack of credibility finding, the ALJ [must] 'point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims." *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009).  The ALJ "[m]ay consider a range of factors in assessing credibility, including (1) 'ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) that claimant's daily activities.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (1996)).  "If the ALJ's finding is supported by substantial evidence, the court may

not engage in second guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ found that the "claimants medically determinable impairments could reasonably be expected to cause the alleged symptoms," and the ALJ did not point to any affirmative evidence of malingering.  AR 20.  Having satisfied prong one, the ALJ moved on to provide clear and convincing reasons why Plaintiff's statements "concerning the intensity, persistence and limiting effects of" her shoulder pain, hypertension, and mental illness were rejected.  *Id.*

Plaintiff alleges an impairment and pain in her right shoulder.  Dkt. No. 11 at 2.  The ALJ reviewed Plaintiff's medical history, and found the MRI revealed right shoulder tendonitis, which suggests she has mobility problems.  AR 21.  Joint dysfunction requires "an inability to perform fine and gross movements effectively."  *Id*. at 19.  However, the ALJ reviewed the Plaintiff's daily activities, found she is able to clean her living area and drive, and both activities involve fine and gross movements.  *Id.*  Additionally, the ALJ gave great weight to Dr. Bryan's testimony at the hearing and, though Dr. Bryan agreed that Plaintiff had limited overhead reach in her right shoulder, he did not believe she had any other physical limitations.  *Id*. at 22.  These reasons are sufficiently clear and convincing for the ALJ to discount the claimant's subjective testimony regarding her shoulder.

Plaintiff's hearing testimony did not directly deal with hypertension; however, as hypertension was included in her initial disability claim, the ALJ considered whether it could affect her ability to lift, walk, or squat.  *Id*. at 19–20, 22.  "Hypertension is evaluated by references to the body system(s) affected."  *Id*. at 19 (citing Social Security Administration, Disability Evaluation Under Social Security, § 4.00: Cardiovascular System – Adult.)  The ALJ reviewed the record, and found the claimant did not assert her hypertension aggravated any underlying condition.  *Id.*  "Further, the evidence shows that the claimant's hypertension is well controlled with medication."  *Id.*  The ALJ then turned to the Plaintiff's medical history, and found her cardiac function test showed

"strong cardiovascular functioning." *Id*. at 21. The ALJ also gave great weight to Dr. Bryan's testimony that confirmed her hypertension is well controlled with medication. *Id.* These reasons are sufficiently clear and convincing for the ALJ to discount the claimant's subjective testimony regarding her hypertension.

Finally, Plaintiff alleged disability due to depression, anxiety, and fatigue. Dkt. No. 11 at 3–4. The ALJ reviewed the record, and found that Plaintiff's activities of daily living show she is "responsible, mobile, independent, and presentable." AR 21. Plaintiff is capable of caring for two dogs, helping her mother, handling finances, and occasionally socializing with others. *Id.* Further, though Plaintiff has a history with mental health issues, she has not sought psychiatric care and refuses to take her medication. *Id.* And, finally, every non-treating physician and the testifying medical expert opined that Plaintiff did not have a severe mental impairment. *Id*. at 21–22. These reasons are sufficiently clear and convincing for the ALJ to discount the claimant's subjective testimony regarding her mental illness.

As noted by the Magistrate Judge, the ALJ further discounted the Plaintiff's subjective testimony because she collected unemployment benefits from 2012–2014, and told her treating physician that she was working part-time in June 30, 2014. "Continued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working." *Ghanim*, 763 F.3d at 1156. Thus, Plaintiff's certification to the unemployment office that she was ready, willing, and able to work, combined with the finding she worked part-time in 2014, provides further clear and convincing reasons for the ALJ to discount her testimony.

Accordingly, the Court finds the ALJ provided specific, clear, and convincing reasons justifying his decision to discount Plaintiff's testimony.

### b. Dorothy L. Nigh's "Function Report"

Plaintiff argues the ALJ improperly discounted a "Function Report" completed by Plaintiff's mother, Dorothy L. Nigh, and filed with Plaintiff's initial claim. AR 11. Ms. Nigh's report parrots Plaintiff's subjective testimony. She states Plaintiff suffers from

chronic pain; does not handle stress well; has difficulty socializing and sleeping; forgets to take her medicine; and has limited use of her shoulder. AR 187 – 195.

Nonetheless, Plaintiff asserts the ALJ acted arbitrarily by not providing adequate reasons for "failing to consider the lay witness's evidence of record." Dkt. No. 11 at 12. Defendant responds that Plaintiff does not challenge the ALJ's credibility findings and, as Ms. Nigh's opinion is consistent with her daughter's, there is no reason to give Ms. Nigh's opinion any extra weight.

### i. Magistrate Judge's Findings

The Magistrate Judge reviewed the record, and found the ALJ rejected Ms. Nigh's report, in part, because she repeated the same impairments and limitations as Plaintiff. Dkt. No. 16 at 23. As "the ALJ provided clear and convincing reasons for rejecting Plaintiff's pain and symptom testimony, the ALJ has also provided clear and convincing reasons for rejecting Ms. Nigh's testimony." *Id.* (citing *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)). Further, the ALJ found Ms. Nigh's report was inconsistent with the medical evidence on record, which is "a germane reason for discounting lay witness testimony. *Id.* (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)).

### ii. Analysis and Review

The ALJ must consider lay witness evidence unless he expressly decides to disregard that testimony for "reasons that are germane to each witness." *Molina*, 674 F.3d at 1114. "Discounting competent lay witness testimony without comment, therefore, constitutes legal error and it deprives the Commissioner of substantial justification." *Tobeler v. Colvin*, 749 F.3d 830, 832–33 (9th Cir. 2014). However, when lay testimony is similar to the Plaintiff's own, subjective complaints, the ALJ may reject lay evidence "based, at least in part, on 'the same reasons [he] discounted [the Plaintiff's] allegation.'" *Valentine*, 574 F.3d at 694 ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective

1   complaints, and because Ms. Valentine's testimony was similar to such complaints, it

2   follows that the ALJ also gave germane reasons for rejecting her testimony.")

3        Contrary to Plaintiff's assertions, the ALJ did not "fail[] to consider the lay

4   witness's evidence of record." Dkt. No. 11 at 12.  The ALJ considered it and chose to

5   give it very little weight. AR 20.  Ms. Nigh "opined substantially similar impairments and

6   limitations as her daughter" and "described that the claimant has emotional issues and

7   frequent outbursts." *Id.*  The ALJ then chose to discount that evidence for the same

8   reasons he discounted Plaintiff's subjective testimony; namely "the medical evidence and

9   opinions do not support her opinion's severity." *Id.*  Finally, as Plaintiff's mother "does

10  not have the appropriate psychological or medical training to make exacting observations,

11  diagnoses, and determine mental or physical limitations," Ms. Nigh's opinion was given

12  no more weight than afforded to Plaintiff. *Id.*  Thus, the ALJ provided germane reasons

13  for discounting Ms. Nigh's opinion.

14       In conclusion, the ALJ provided clear and convincing reasons for discounting

15  Plaintiff' subjective testimony, and provided germane reasons for rejecting Ms. Nigh's

16  report.

17  ### III.   *The ALJ did not err by omitting mental impairments from the hypothetical*

18       *question posed to the VE.*

19       Plaintiff, building on her prior argument that the ALJ failed to provide clear and

20  convincing reasons for rejecting lay evidence, next asserts that if the ALJ afforded the

21  Plaintiff and Ms. Nigh's subjective testimony the proper weight, he would have found the

22  Plaintiff's mental impairments were severe.  Dkt. No. 11 at 13. That, in turn, requires the

23  ALJ include Plaintiff's mental impairments in the hypothetical question posed to the VE.

24  *Id*. at 14.

25       Defendant succinctly responds that, as the ALJ considered all evidence of all the

26  Plaintiff's impairments, and appropriately found the Plaintiff's mental impairment was

27  non-severe, the ALJ was not obligated "to include mental limitations in the hypothetical

28  to the VE." Dkt. No. 12 at 10.

### a. Magistrate Judge's Findings

The Magistrate Judge established that "hypothetical questions posed to a vocational expert must consider all of the claimant's limitations." Dkt. No. 16 at 24 (citing *Bray v. Astrue*, 278 F.3d 947, 956 (9th Cir. 2002)). However, "an ALJ need not include . . . any impairments that the ALJ has properly rejected." *Id.* (citing *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Magallanes v. Bowen*, 881 F.2d 747, 756–57 (9th Cir. 1989)).

The Magistrate Judge then repeated her prior determination that the "ALJ's rejection of Plaintiff's symptom testimony regarding her mental impairments . . . [is] supported by specific, clear and convincing reasons." Dkt. No. 16 at 24. The ALJ similarly rejected Ms. Nigh's lay testimony for sufficiently germane reasons. *Id.* Thus, the ALJ's non-severe classification was appropriate, and he "did not need to include any mental impairments in the hypothetical question posed to the vocational expert." *Id.*

### b. Analysis and review

At the last step of the five-step sequential analysis, the ALJ bears burden for demonstrating the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4). "The ALJ may meet his burden . . . by asking a vocational expert a hypothetical question based on medical assumptions . . . and reflecting all the claimant's limitations, both physical and mental, supported by the record." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). However, the ALJ may properly limit his hypothetical to include only the impairments grounded in substantial evidence. *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015).

In determining Plaintiff's mental impairments were non-severe, the ALJ considered four broad functional areas set out by the Social Security Administration for evaluating mental disorders: (1) activities in daily living; (2) social functioning; (3) concentration, persistence, or pace; (4) episodes of decompensation. AR 18. Reviewing the record, the ALJ determined the Plaintiff's mental impairments were non-severe, as (1) she is able to care for her dogs, handle her finances, clean her living area, drive, and shop; (2) she appears to have a good relationship with her mother, and can socialize with

her neighbors; (3) both DDS evaluators deemed the claimant had mild limitations in her ability to concentrate; (4) there was absolutely no evidence of any recent psychiatric hospitalization.  *Id.*

Additionally, as discussed above, the ALJ provided clear, convincing, and specific reasons for discounting the subjective testimony of the Plaintiff, and germane reasons for discounting her mother's report.  The ALJ, therefore, properly found Plaintiff's alleged mental impairments did not affect her residual functional capacity.  Neither the evidence in the record nor the testimony at the hearing supported Plaintiff's alleged mental limitations.

Finally, despite Plaintiff's assertions otherwise, the ALJ asked two hypotheticals; the second added that the hypothetical claimant "would be off-task 20 percent of the day" due to psychological problems.  AR 54.  However, as the ALJ rejected the subjective testimony of Plaintiff's mental limitations, he only considered the first hypothetical in his decision.  *Id*. at 23.

Accordingly, the Court finds that the ALJ was permitted to solely consider the hypothetical on Plaintiff's physical limitations, and was not required to additionally consider the hypothetical concerning Plaintiff's non-severe mental impairments, in rendering his final decision.

## **CONCLUSION**

Based on the above, the Court ADOPTS the Report and Recommendation of the Magistrate Judge and **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's cross-motion for summary judgment.  The Clerk of the Court shall close the case.

IT IS SO ORDERED.

Dated:  March 22, 2017

Hon. Gonzalo P. Curiel
United States District Judge